DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Herbert Armstrong, appeals from the judgments of the Medina County Court of Common Pleas which denied his motion to dismiss and convicted him of possession of cocaine. We affirm.
 I. {¶ 2} On March 28, 2002, Mr. Armstrong was arrested and charged with possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), and criminal trespass, in violation of Brunswick City Ordinance 642.12(A)(4). Mr. Armstrong pled no contest to possessing drug paraphernalia and the State dismissed the criminal trespassing charge. Mr. Armstrong was sentenced accordingly.
 {¶ 3} Thereafter, on October 2, 2002, the Medina County Grand Jury charged Mr. Armstrong with one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a). This charge related to the arrest of Mr. Armstrong on March 28, 2002. Mr. Armstrong filed a motion to dismiss for lack of a speedy trial and violation of the double jeopardy clause. The motion was denied. He then entered a plea of no contest and was sentenced to a ten month prison term and six month license suspension. Mr. Armstrong timely appealed, raising three assignments of error, which have been rearranged to facilitate review.
 II. A. Second Assignment of Error
"The trial court erred in overruling [Mr. Armstrong's] motion to dismiss on grounds that his statutory rights to a speedy trial under [R.C. 2945.71, et seq.] were violated and/or his constitutional rights to a speedy trial under the Sixth andFourteenth Amendments to the United States Constition and ArticleI, Section [10] of the Ohio Constituion were violated."
 {¶ 4} In his second assignment of error, Mr. Armstrong maintains that the court erred when it denied his motion to dismiss for failure to convene a speedy trial, in violation of R.C. 2945.71, et seq., and the applicable provisions of the Ohio and United States Constitutions. We disagree.
 {¶ 5} The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. State Pachay (1980), 64 Ohio St.2d 218, 219. R.C.2945.71, et seq. designates time periods within which the State must bring an accused to trial. The time for speedy trial begins to run when the accused is arrested, however, the actual day of arrest is not included in the calculation. State v. Szorady,
9th Dist. No. 02CA008159, 2003-Ohio-2716, at ¶ 12. Pursuant to R.C. 2945.71(C)(2), a person charged with a felony must be brought to trial within two hundred seventy days after his arrest.
 {¶ 6} When a court is not in compliance with the time requirements specified in R.C. 2945.71, "a person charged with an offense shall be discharged if he is not brought to trial[.]" R.C. 2945.73(B). Such discharge is a bar to any further criminal proceedings against the accused based on the same conduct. R.C.2945.73(D). The time requirements within which an accused must be brought to trial may be tolled by certain events listed in R.C.2945.72. Specifically, the speedy trial period may be tolled for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E).
 {¶ 7} Additionally, special circumstances may arise in cases with multiple indictments. See State v. Baker,78 Ohio St.3d 108, 110, 1997-Ohio-229. When issuing a subsequent indictment, "the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." Id.,78 Ohio St.3d 108 at syllabus. The State is not required to bring additional charges within the time period of the original indictment if the State did not have knowledge of the additional charges until performing investigations of later-seized evidence. See id. at 111.
 {¶ 8} "When reviewing a defendant's claim that he was denied the right to a speedy trial, an appellate court applies the de novo standard to questions of law and the clearly erroneous standard to questions of fact." State v. Berner, 9th Dist. No. 3275-M, 2002-Ohio-3024, at ¶ 5, citing State v. Thomas (Aug. 4, 1999), 9th Dist. No. 98CA007058.
 {¶ 9} Applying the above standards to the instant matter, we find that when issuing the second indictment against Mr. Armstrong, the State was not subject to the speedy trial time limits of the original arrest, as the subsequent charges were based on additional facts revealed through further investigation. See Baker, 78 Ohio St.3d at 111. Mr. Armstrong asserts that the time limit, pursuant to R.C. 2945.71, began to run on March 28, 2002, the date of his arrest for possession of drug paraphernalia and criminal trespassing. At this time, a white substance was found in Mr. Armstrong's possession. It was then sent to the Bureau of Criminal Investigation ("BCI") for analysis. On August 28, 2002, Mr. Armstrong plead no contest to the possession of drug paraphernalia and the criminal trespassing charge was dropped. That same day, Mr. Armstrong was sentenced to a $150 fine and a six-month license suspension. Thereafter, on September 3, 2002, the State received the results of the tests performed by the BCI. The report indicated that the white substance tested positive for cocaine. Mr. Armstrong was then indicted for possession of cocaine on October 2, 2002 and arrested on December 6, 2002.
 {¶ 10} In this case, the charge of possession of cocaine was dependent upon a laboratory analysis of the white substance seized from Mr. Armstrong upon his initial arrest on March 28, 2002. As the BCI report indicating that the substance tested positive for .24 grams of cocaine was not available to the State on that date, the rule announced in Baker applies and the State was not subject to the speedy trial timetable applicable to the initial charges. See Baker, 78 Ohio St.3d at 110-11; State v.Riley (June 12, 2000), 12th Dist. No. CA99-09-087 (finding that the possession charge "ultimately resulted out of an operative fact not present as to the [initial] DUI charge: the testing of the white powder and its confirmation as cocaine"); State v.Lekan (June 27, 1997), 2nd Dist. No. 16108 (finding that the second charge to the defendant was dependent upon a laboratory analysis of the defendant's urine which was not available to the State at the time of the initial arrest); State v. Clark, 11th Dist. Nos. 2001-P-0031, 2001-P-0033 2001-P-0034, 2001-P-0057, and 2001-P-0058, 2004-Ohio-334, at ¶ 73 (finding that although the State "may have had a good idea that the substance was cocaine prior to the analysis date, they did not know for sure until the substance was analyzed" thus there was no violation of the defendant's right to a speedy trial); State v. Wangul, 8th Dist. No. 79393, 2002-Ohio-589 (finding that the subsequent indictment, filed after the marijuana was weighed and the charges determined, was based on new and additional facts which were not known at the time the defendant was arrested); State v.Cantrell (Sept. 7, 2001), 2nd Dist. No. 00CA0095. Thus, a new period began to run from Mr. Armstrong's arrest on December 6, 2002. See Szorady at ¶ 12.
 {¶ 11} We also note that when Mr. Armstrong filed his motion to dismiss, he effectively extended the time in which the trial court was required to bring him to trial. See State v.Bickerstaff (1984), 10 Ohio St.3d 62, 67. Thus, the speedy trial period was tolled from the filing of his motion, on March 3, 2003, until the date that the trial court denied Mr. Armstrong's motion, on March 17, 2003. Thus, Mr. Armstrong should have been brought to trial no later than September 16, 2003. See R.C.2945.71(C)(2). Therefore, Mr. Armstrong's motion to dismiss, which was filed on March 3, 2002, was premature as it was filed approximately six months before the speedy trial period expired. See State v. Hughes, 9th Dist. No. 02CA008206, 2003-Ohio-5045, at ¶ 14. Consequently, on March 17, 2003, the trial court properly denied Mr. Armstrong's motion. Mr. Armstrong's second assignment of error is overruled.
 B. First Assignment of Error
"The trial court erred in overruling [Mr. Armstrong's] motion to dismiss on grounds of double jeopardy in violation of theFifth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution."
 {¶ 12} In his first assignment of error, Mr. Armstrong asserts that the trial court erred when it denied his motion to dismiss. Specifically, he argues that the charge for possession of cocaine was barred pursuant to the collateral estoppel component of the Double Jeopardy clause. Mr. Armstrong's argument is not well taken.
 {¶ 13} Pursuant to the Fifth and Fourteenth Amendments to United States Constitution, "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb[.]" The Double Jeopardy clause embraces the belief that the State should not be permitted to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expenses, and a continuous state of anxiety and insecurity. State v. Lovejoy, 79 Ohio St.3d 440, 443,1997-Ohio-371, quoting Green v. United States (1957),355 U.S. 184, 187-88, 2 L.Ed.2d 199.
 {¶ 14} Additionally, the clause protects a defendant's right to have his trial completed by the same tribunal. Lovejoy,79 Ohio St.3d at 443, quoting Crist v. Bretz (1978), 437 U.S. 28,35-36, 5 L.Ed.2d 24. Once an issue of fact has been decided in favor of a defendant, the Double Jeopardy clause also prevents a second jury from considering that same issue in a later trial.Lovejoy, 79 Ohio St.3d at 443, citing Dowling v.United States (1990), 493 U.S. 342, 348, 107 L.Ed.2d 708. The doctrine of collateral estoppel, or issue preclusion, provides "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Lovejoy,79 Ohio St.3d at 443-444, quoting Ashe v. Swenson (1970), 397 U.S. 436, 443,25 L.Ed.2d 469. Generally, collateral estoppel refers to the "acquittal prong" of double jeopardy. Lovejoy,79 Ohio St.3d at 444. Thus, "[c]ollateral estoppel may be used to bar a later prosecution for a separate offense only where the government loses in the first proceeding." State v. Phillips,74 Ohio St.3d 72, 80, 1995-Ohio-171, citing United States v. Dixon
(1993), 509 U.S. 688, 705, 125 L.Ed.2d 556.
 {¶ 15} In order to entertain a claim of collateral estoppel, a reviewing court must examine the record of the previous proceeding in order to ascertain which issues were actually decided therein. Phillips, 74 Ohio St.3d at 80, citing Sealfonv. United States (1948), 332 U.S. 575, 578-79, 92 L.Ed. 180. This cannot be done unless the previous record was made a part of the record below. Phillips, 74 Ohio St.3d at 80. Thus, Mr. Armstrong was required to bring the record from the initial proceeding before the trial court. See Phillips,74 Ohio St.3d at 80.
 {¶ 16} In the present matter, Mr. Armstrong vaguely asserts that the charge for possession of cocaine "was barred because of the collateral component of the Double Jeopardy Clause[.]" He does not, however, cite to any factual issues that were determined in the initial proceedings for possession of drug paraphernalia and criminal trespassing and thus could not be litigated in the proceedings for possession of cocaine. Moreover, Mr. Armstrong failed to provide the trial court with the transcript of the proceedings or other evidence from his previous case to substantiate this claim. See State v. Busby, 9th Dist. No. 21229, 2003-Ohio-3361, at ¶ 7. As the trial court was not provided with an adequate record to determine Mr. Armstrong's double jeopardy claim, we are unable to conclude that the court erred when overruling his motion to dismiss. Mr. Armstrong's first assignment of error is overruled.
 C. Third Assignment of Error
"[Mr. Armstrong] was denied effective Assistance of Counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, section 10 of the Constitution of the State of Ohio due to counsel's failure to move to dismiss, to argue for dismissal or to subpoena witnesses to hearing on the grounds [Mr. Armstrong] was denied his right to a speedy trial and/or to not be subjected to double jeopardy."
 {¶ 17} In his final assignment of error, Mr. Armstrong asserts that his trial counsel was ineffective. Mr. Armstrong states that counsel's alleged errors, which included both the failure to file a motion to dismiss and the failure to argue and subpoena witnesses in support of the motion, resulted in prejudice to him. Mr. Armstrong's assertions lack merit.
 {¶ 18} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 19} Mr. Armstrong bears the burden of proof on this matter. Colon at ¶ 49, citing State v. Smith (1985),17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Colon at ¶ 49, citing Smith,17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215. It is also well established that "[c]ounsel need not raise * * * frivolous issues[.]" State v. Campbell
(1994), 69 Ohio St.3d 38, 53, citing Jones v. Barnes (1983),463 U.S. 745, 751, 77 L.Ed.2d 987; see, also, Engle v. Isaac
(1982), 456 U.S. 107, 134, 71 L.Ed.2d 783 (stating that "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim"). Therefore, "[c]ounsel may limit the number of arguments raised in order to focus on those issues most likely to bear fruit." See State v. Caulley, 10th Dist. No. 97AP-1590, 2002-Ohio-7039, at ¶ 4, citing State v. Allen,77 Ohio St.3d 172, 173, 1996-Ohio-366. Additionally, we note that debatable trial tactics do not give rise to a claim for ineffective assistance of counsel. In Re: Simon (June 13, 2001), 9th Dist. No. 00CA0072, citing State v. Clayton (1980), 62 Ohio St.2d 45,49. A defendant should put forth a showing of a substantial violation of an essential duty. Watson, supra.
 {¶ 20} Prejudice, the second prong of the Strickland
analysis, entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The court is also to consider "`the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Colon at ¶ 49, quoting Strickland,466 U.S. at 690. An appellate court may analyze the second prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. See State v.Loza, 71 Ohio St.3d 61, 83, 1994-Ohio-409.
 {¶ 21} Therefore, based on the Strickland analysis, a defendant does not state a claim for ineffective assistance of counsel unless his attorney has acted unreasonably, given the facts of the case, and the unreasonable conduct was prejudicial to the defense. State v. Mills (1992), 62 Ohio St.3d 357, 370. Hence, the question of whether Mr. Armstrong's trial counsel provided effective or ineffective assistance is based upon whether the motion to dismiss would have been granted. As we have concluded that Mr. Armstrong was not denied the right to a speedy trial, it follows that Mr. Armstrong's trial counsel was not ineffective in failing to file such a motion based on this issue.
 {¶ 22} In regards to the collateral estoppel issue, Mr. Armstrong has not demonstrated that but for counsel's failure to provide the trial court with the record from his previous case, the result would have been different. As noted above, Mr. Armstrong did not even cite any factual issues that were determined in the initial proceedings that could not be re-litigated in the instant matter. Thus, as Mr. Armstrong has not shown a reasonably probability exists that, but for counsel's errors, the result of the proceedings would have been different, we must overrule his third assignment of error. See Bradley,42 Ohio St.3d 136 at paragraph three of the syllabus.
 {¶ 23} Mr. Armstrong's assignments of error are overruled. The judgments of the Medina County Court of Common Pleas are affirmed.
Judgment affirmed.
Slaby, P.J., concurs.